IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY LLOYD, As Special Administrator of ) <br> The Estate of PHILLIP LLOYD, Deceased, ) <br> ) <br> Plaintiff, ) <br> -v- ) <br> ) <br> AURELIUS COLE and JOHNNY HOLMES, ) <br> in his official capacity as Chief of the Village ) <br> of Robbins Police Department, ) <br> ) <br> Defendants. ) | Case No. 08 C 2701 <br><br> Judge St. Eve |

### DEFENDANTS' MOTION TO STRIKE AND/OR DISMISS CERTAIN PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT AT LAW

Defendants, Aurelius Cole and Johnny Holmes, in his official capacity as Chief of the Village of Robbins Police Department, through their attorneys, Gregory E. Rogus and Anastasios T. Foukas, move pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure to dismiss Counts II, III, VI, VII, VIII and IX of Plaintiff's Second Amended Complaint in their entirety, to strike certain claims from Counts IV, V, VIII, and IX, and to strike certain allegations from Counts I through IV, VI, and VIII, and in support state as follows:

### BACKGROUND

This case was originally filed in the Circuit Court of Cook County, Illinois. The Defendants removed the case to this court after the Plaintiff filed her First Amended Complaint. Following removal, Defendants moved to dismiss Counts III and IV of the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. In response, Plaintiff conceded that Counts III and IV were deficient and sought leave to amend. On July 15, 2008, this court entered an order granting Defendant's motion to dismiss Counts III and IV without prejudice and allowing the Plaintiff leave to file a Second Amended Complaint. Plaintiff did so on July 21, 2008. Her nine-count Second Amended Complaint alleges claims under both federal and state law. Counts I

through V are directed against Officer Cole, while Counts VI through IX seek relief solely against Johnny Holmes "in his official capacity as Chief of the Village of Robbins Police Department."[1]

In Count I, Plaintiff asserts a claim under the Illinois Wrongful Death Act alleging Officer Cole acted willfully and wantonly. Defendant Cole has answered this count, though, as more fully set forth below, is seeking to strike the allegation seeking relief on behalf of any heirs at law other than the Decedent Phillip Lloyd's next of kin. Counts II and III allege additional state law claims against Officer Cole. Plaintiff has incorporated into these counts the allegation contained in Count I that Officer Cole was acting under color of law and enforcing the laws of the Village of Robbins and the State of Illinois as a Robbins Police Officer. (See Counts I, II, and III, ¶ 2). Count II further alleges that Officer Cole committed "negligent and wrongful acts" and was "negligent and careless" in handling a firearm, which allegedly resulted in Phillip Lloyd's death. (See Count II, ¶¶ 9-10). Count III alleges that Officer Cole's "grossly negligent and reckless" acts led to Phillip Lloyd's death. (See Count III, ¶¶ 9-10). Counts IV and V assert claims against Officer Cole under 42 U.S.C. § 1983 for deprivation of the decedent's Fourth and Fourteenth Amendment rights. Officer Cole has answered these counts, though, as more fully set forth below, is moving to strike from both counts Plaintiff's purported claims under the due process clause of the Fourteenth Amendment.

With regard to the counts directed against Chief Holmes, Counts VI and VII assert state law claims, though Plaintiff persists in suing the Chief "in his official capacity." In Count VI, Plaintiff alleges that Chief Holmes acted with "carelessness and negligence" in hiring, supervising, disciplining and/or failing to train Officer Cole (See Count VI, ¶10) and seeks relief for the heirs and next of kin of Phillip Lloyd. Count VII also alleges negligence (See Count VII, ¶¶ 9-10) and seeks relief for the estate itself predicated upon Lloyd's alleged conscious pain and suffering prior to his death. Counts VIII and IX, on the other hand, allege "official capacity" claims against the Chief pursuant 42 U.S.C. § 1983. Count VIII seeks recovery for the heirs and next of kin, while Count IX is brought for the benefit of the Decedent's estate.

---

[1] Plaintiff makes no claims against Chief Holmes in his individual capacity.

For the reasons that follow, the Defendants are moving pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts II, III, VI, VII, VIII, and IX in their entirety. With regard to Count III, Defendant Cole moves, in the alternative, to strike it pursuant to Rule 12(f) as duplicative. Defendants also move to strike from Counts IV, V, VIII, and IX Plaintiff's purported claims predicated upon an alleged violation of the due process clause of the Fourteenth Amendment. Lastly, Defendants move to strike from Counts I through IV, VI, and VIII Plaintiff's request for relief on behalf of the "heirs at law" of Phillip Lloyd.

## BASES FOR DISMISSAL AND FOR STRIKING CERTAIN CLAIMS AND ALLEGATIONS

1. Count II must be dismissed because it specifically alleges that Officer Cole was engaged in enforcing the law at the time Phillip Lloyd was shot. Consequently, Plaintiff must plead more than ordinary negligence to state a claim, since the Illinois Local Government and Governmental Employees Tort Immunity Act ("the Tort Immunity Act"), and in particular §2-202 thereof (745 ILCS 10/2-202) immunizes officers from liability for their acts or omissions in the execution or enforcement of the law unless those acts are willful and wanton.

2. Count III must be dismissed because it also alleges negligence, albeit "gross" negligence. Even if Plaintiff's characterization of Officer Cole's acts as "reckless" is deemed the equivalent of an allegation of willful and wanton misconduct, then Count III should nonetheless be stricken and/or dismissed for the reason it would merely duplicate Count I.

3. Count VI must be dismissed because, as a matter of law, and in particular pursuant to §2-204 of the Tort Immunity Act, Chief Holmes cannot be held liable for injuries caused by the acts or omissions of another person. This count specifically alleges that Phillip Lloyd died as a direct and proximate result of Officer Cole's actions. Furthermore, under §2-201 of the Tort Immunity Act, Chief Holmes is immune from liability for any of his discretionary acts in determining policy, which would include the discretion he exercises as a police chief in hiring, training, and supervising subordinate officers such as Defendant Cole.

3

4. Count VII must be dismissed for the same reasons as Count VI. (The only difference between these counts is that VI seeks relief for the heirs and next of kin, while VII is brought on behalf of the estate itself to recover for Decedent's alleged conscious pain and suffering.)

5. Counts VIII and IX, which assert claims under 42 U.S.C. §1983 against Chief Holmes in his official capacity, must be dismissed because they do not meet the standard for a sufficient pleading under Rule 8(a) of the Federal Rules of Civil Procedure and *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007).

6. To the extent Plaintiff seeks to assert a separate or additional claim within Counts IV, V, VIII and IX based on the alleged deprivation of Phillip Lloyd's rights under the due process clause of the Fourteenth Amendment, those claims must be stricken. Under the facts and circumstances alleged in the Second Amended Complaint, Plaintiff is limited to seeking relief under the Fourth Amendment. The Fourteenth Amendment is inapplicable.

7. With regard to Counts I through IV, VI, and VIII, to the extent Plaintiff seeks to recover damages under the Illinois Wrongful Death Act on behalf of any heirs of Phillip Lloyd other than his "next of kin," said request must be stricken. Under the Act, the recovery of damages must be for the sole benefit of the decedent's next of kin as defined by state law. (740 ILCS 180/2).

In further support of these bases for dismissal, Defendants present the following arguments and authority.

## ARGUMENTS AND AUTHORITY

**I. Count II fails to state a claim because, under controlling law, Officer Cole is not liable for his acts or omissions in enforcing the law unless those acts or omissions constitute willful and wanton conduct.**

The Tort Immunity Act, and in particular §2-202, protects any municipal employee engaged in the enforcement or execution of the law from any suit alleging that his conduct was merely negligent. 745 ILCS 10/2-202. The Act provides that a municipal employee executing or enforcing the law can only be liable for willful and wanton conduct, *Id.*, and defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an

utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

Plaintiff's Second Amended Complaint alleges that Officer Cole was "a duly appointed and acting Robbins Police Officer" as of November 18, 2006 (See Count I, ¶ 2) and that he was "authorized to enforce the laws... *and was so acting...at all times relevant to this action.*" (See Count I, ¶ 2) (Emphasis added). Count II incorporates this allegation. (*See* Count II, ¶ 2). Since the Plaintiff is asserting that Officer Cole was enforcing the law at the time of the incident, the Plaintiff must, as a threshold matter, plead that the officer's conduct was willful and wanton. 745 ILCS 10/2-202.

Count II does not allege Officer Cole acted willfully or wantonly. Instead, ¶ 9 of Count II asserts that Officer Cole should be held liable for "his negligent and wrongful acts, including his negligent and careless handling of a firearm." (*See* Count II, ¶ 9). There is nothing in that paragraph, or any portion of Count II, that could be read to infer actual or deliberate intent to cause harm or utter indifference or conscious disregard for the Decedent's safety. Accordingly, Count II is insufficient as a matter of law and must be dismissed.

II.   **Count III fails to state a claim because, like Count II, it fails to allege that Officer Cole acted willfully and wantonly. In the alternative, Count III should be dismissed as duplicative of Count I.**

In Count III, Plaintiff alleges that Officer Cole committed "grossly negligent and reckless acts, including his excessive and unnecessary use of force." (Count III, ¶ 9). The remainder of Count III is identical to Counts I and II. Thus, Plaintiff is contending that she can pursue a claim, separate and independent of Counts I and II, for "gross negligence."

Illinois, however, does not recognize an independent tort for "gross negligence." *See Catalan v. RBC Mortg. Co.*, 05 C 6920, 2008 WL 2557462, (N.D. Ill. June 23, 2008) (J. Dow) citing *Instituto Nacional De Comercializacion Agricola (Indeca) v. Continental Illinois Nat.*, 530 F.Supp. 279, 283 (N.D. Ill. 1982). As Judge Dow noted in *Catalan*, such a claim "must be a claim for negligence." *Id.* at *3. However, the Tort Immunity Act requires a plaintiff to allege willful and wanton conduct to state a claim against a municipal employee executing or enforcing the law. Thus, Count III is legally insufficient. 745 ILCS 10/2-202.

5

In the alternative, even if this Court disagrees with Judge Dow's analysis in *Catalan* and concludes, instead, that "grossly negligent and reckless acts" are one and the same as "willful and wanton conduct," then Count III must nonetheless be stricken, pursuant to Rule 12(f), as being merely duplicative of Count I.

**III.    Counts VI and VII must be dismissed because Chief Holmes cannot be held liable, as a matter of law, for injuries caused by the act or omission of another person. Furthermore, the Chief cannot be held liable for his discretionary decisions with regard to the hiring, training, or supervision of other police officers.**

Section 2-204 of the Illinois Tort Immunity Act protects a municipal employee from liability for injuries caused by the "act or omission of another person." 745 ILCS 10/2-204. This provision applies to police superintendents and police chiefs being sued for injuries caused by the acts of their subordinate officers. *See, e.g., Clark v. City of Chicago*, 595 F.Supp. 482, 485-87 (N.D. Ill. 1984) (finding superintendent and supervisor could not be liable on *respondeat superior* grounds for a patrol officer's false arrest of the plaintiff, notwithstanding plaintiff's allegation that the defendants "engaged in a pattern of failures in the training and disciplining of ... police officers"); *Eiland v. Hardesty*, 564 F.Supp. 930, 934 (N.D. Ill. 1982) (finding superintendent could not be liable for another officer's shooting of a private citizen). Since Count VI alleges that Phillip Lloyd was shot by Officer Cole, Chief Holmes cannot, under §2-204, be held liable for any injuries or damages resulting from that shooting. Furthermore, since Count VII is materially similar to Count VI (the only real difference being the persons who are allegedly entitled to recover damages – the heirs and next of kin versus the estate), the same reasoning and analysis applies to that count as well.

The Tort Immunity Act also immunizes an official with policymaking authority for his discretionary actions. Section 2-201 states: "Except as otherwise provided by statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. This provision has been interpreted to immunize the decisions to hire, train and supervise police officers and other municipal employees. *See Reed v. City of*

6

*Chicago*, 01 C 7865, 2002 WL 406983, * 3, (J. Moran) (N.D. Ill. 2002). In *Reed*, Judge Moran rejected a claim against the City of Chicago alleging negligent hiring, training and supervision of its police officers. While the city had guidelines addressing the proper exercise of those activities, the hiring, training, and supervision of police officers all necessarily involved the exercise of discretion, the balancing of interests, and judgment calls. *Id. See also Johnson v. Mers*, 279 Ill. App. 3d 372, 380, 664 N.E.2d 668, 674 (2d Dist. 1996).

The fact that Counts VI and VII specify that they are being brought against Chief Holmes "in his official capacity" (See Counts VI and VII, ¶¶ 9, 13) does not cure their inherent legal deficiencies. These particular counts are not brought under 42 U.S.C. §1983. They are, instead, state law claims. This distinction is significant. In §1983 cases, a claim against an official in his "official capacity" is treated as a suit against the governmental entity that employs the defendant. *See Gilchrist v. Kane County Correctional Center*, 48 F. Supp.2d 809, 814 (N.D. Ill. 1999), citing *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.E.2d 611 (1978); *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 382 (7th Cir. 1988) ("An official capacity suit is not against the official as an individual; the real party in interest is the entity.") However, the term "official capacity" is not used in a similar manner in litigation based on Illinois law. Consequently, Counts VI and VII are, in fact, directed solely against Chief Holmes, and not against the Village of Robbins, and he is free to invoke the protections and immunities afforded under §§ 2-201 and 2-204. (If the Plaintiff wishes to press a state law claim against the Village, she must name the Village itself as a Defendant.) Both counts must, accordingly, be dismissed.

IV. **Plaintiff's purported federal claims against Chief Holmes in his official capacity do not meet the standard for a sufficient pleading under Rule 8(a) of the Federal Rules of Civil Procedure and *Bell Atlantic Corporation v. Twombly*.**

In addition to her state law claims, Plaintiff also attempts to assert a "custom, practice and policy" basis for liability against Chief Holmes in his official capacity in Counts VIII and IX. The problem with these counts is that they fall short of stating a claim for relief under Rule 8 of the Federal Rules of Civil Procedure, as recently clarified by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, ___ U.S.

\_\_\_\_, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Rule 8(a)(2) provides:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . .

In *Bell Atlantic*, the Supreme Court examined the meaning of the Rule:

> Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid*; *Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc.*, 40 F. 3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .

127 S. Ct. at 1964-65. The seven-member majority rejected the dissenting justices' suggested interpretation of Rule 8 that would "not require, or even invite, the pleading of facts." The majority countered:

> While for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out *in detail* the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. See 5 C. Wright & A. Miller § 1202, at 94, 95 (Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it").

127 S.Ct. at 1965, n.3.

There is no question that the Rule 8/*Bell Atlantic* standard controls claims for "official capacity"

8

or municipal liability under 42 U.S.C. §1983. For example, in *Chaparro v. Powell*, 2008 WL 68683 (N.D. Ill. 2008), Judge Conlon dismissed a §1983 municipal liability claim because the plaintiff's allegation of a "code of silence" was insufficient to make the existence of such a policy "plausible." Similarly, Judge Kendall recently dismissed a plaintiff's §1983 claim that sought to allege municipal liability when plaintiff's complaint contained only conclusory allegations. *Palka v. Dart*, 2008 WL 1744428 (N.D. Ill. 2008).

When measured against this applicable standard, Counts VIII and IX of the Second Amended Complaint fail to cure the deficiencies that doomed Counts III and IV of the First Amended Complaint. Plaintiff persists in alleging, in purely conclusory fashion, that Chief Holmes, in his official capacity, was, "on information and belief . . . acting under longstanding and widespread customs, practices, and/or policies." (Counts VIII, IX, ¶¶ 10, 11). Plaintiff broadly, and without any factual support whatsoever, concludes that "[s]aid customs, practices, and/or policies consisted of improper training, hiring, supervising controlling, disciplining, and/or assigning village police officers" and that "[s]aid policies encouraged the use of deadly and excessive force."(*Id.* ¶ 10). Furthermore, the counts recite, again without any factual basis, "[u]nder these longstanding customs, practices, and/or policies, personnel were not discouraged from using deadly and excessive force." (*Id.* ¶ 11).

The latest amended pleading points to but one event – the shooting on November 18, 2006. That single event is insufficient in and of itself to establish the existence of some custom, practice, or policy that was the moving force behind any alleged constitutional violation occurring on that date. Furthermore, since Plaintiff has not alleged any other facts establishing any such custom, practice or policy, she is in much the same position as the plaintiff in *Bell Atlantic* who did not allege anything to establish the existence of a conspiratorial or other agreement, other than parallel business behavior. The Supreme Court determined that the complaint in *Bell Atlantic* must be dismissed "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible." 127 S.Ct. at 1974. The same holds true with regard to counts VIII and IX of Plaintiff's Second Amended complaint. They must, accordingly, be dismissed.

9

V.  **The portions of Counts IV, V, VIII, and IX that allege a deprivation of Phillip Lloyd's rights under the due process clause of the Fourteenth Amendment fail to state a claim against either Defendant, and must therefore be stricken.**

With regard to claims alleging injuries and constitutional deprivations resulting from a governmental actor's use of excessive force, courts must consider the factual context and time sequence of events. Some claims will be controlled by the Fourth Amendment, some by the due process clause of the Fourteenth, and some by the Eighth. In this case, Plaintiff is alleging both Fourth and Fourteenth Amendment violations in Counts IV, V, VIII, and IX. While Officer Cole has answered the balance of Counts IV and V, he is moving to strike the allegations that attempt to set forth a separate and independent Fourteenth Amendment violation. In addition to the grounds for dismissing Counts VIII and XI in their entirety, as discussed above, Chief Holmes in his official capacity also moves to strike the references to the alleged Fourteenth Amendment deprivations from those counts.

Fourteenth Amendment due process principles do not govern until after a judicial determination of probable cause. *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). Here, there are no factual allegations that would trigger the protection of the Fourteenth Amendment. Mr. Lloyd was not, as of November 18, 2006, a pretrial detainee in state custody following a judicial determination of probable cause. He was, instead, a free man out in public and allegedly visiting with friends at the time of the incident giving rise to Plaintiff's claims. His special administrator, therefore, has no basis for invoking Fourteenth Amendment protection under the factual scenario alleged. To the extent Counts IV, V, VIII and IX assert an entitlement to damages premised upon a violation of the Fourteenth Amendment, they fail to state a claim against either Defendant. Those particular allegations must, therefore, be stricken from the Second Amended Complaint.

VI.  **To the extent Plaintiff seeks to recover damages under the Illinois Wrongful Death Act on behalf of any heirs of Phillip Lloyd other than his "next of kin," the request must be stricken since the Act limits the recovery of damages only for the sole benefit of the decedent's next of kin.**

In Counts I, II, III, IV, VI and VIII, Plaintiff seeks to recover damages for the *"heirs at law and next of kin"* of Phillip Lloyd based on their alleged loss of his support, comfort, society, companionship,

and affection. (See Counts I, II, III, ¶¶ 12, 13; Counts IV, VI, ¶¶ 13, 14; Count VIII, ¶¶ 14-16) (Emphasis added). However, the Illinois Wrongful Death Act, which Plaintiff specifically invokes, provides an opportunity only for "the surviving spouse and next of kin" of a decedent to receive fair and just compensation for the injuries caused by the wrongful death. 740 ILCS 180/2. Here, Plaintiff has not alleged that Phillip Lloyd left a surviving spouse. Thus, recovery can only be had for the benefit of his "next of kin" under the Act.

As courts have recognized, the term "next of kin" as used in the statute is meant to be interpreted in its technical sense according to the probate laws of the state. *Means v. City of Chicago*, 535 F. Supp. 455, 465 (N.D. Ill. 1982). Under Illinois' probate laws and rules of descent, as codified at 755 ILCS 5/2-1(b), the only persons entitled to recover are the decedent's descendants. Thus, to the extent Plaintiff is seeking relief for the benefit of any "heirs at law" other than Phillip Lloyd's next of kin, that request must be stricken from Counts I, II, III, IV, VI and VIII.

## CONCLUSION

For the foregoing reasons, and based upon the authorities cited, Defendants Aurelius Cole and Johnny Holmes, in his official capacity as Chief of the Village of Robbins Police Department, request entry of an order dismissing Counts II, III, VI, VII, VIII and IX of Plaintiff's Second Amended Complaint in their entirety. With regard to Count III, Defendant Cole requests, in the alternative, that it be stricken as duplicative of Count I. Defendants also request the Court to strike from Counts IV, V, VIII, and IX Plaintiff's separate or additional claims predicated upon an alleged violation of the due process clause of the Fourteenth Amendment, and to strike from Counts I, II, III, IV, VI, and VIII Plaintiff's request for relief on behalf of the "heirs at law" of Phillip Lloyd.

Respectfully submitted,

Aurelius Cole and Johnny Holmes, in his official capacity as Chief of the Village of Robbins Police Department,

By: \_\_/s/ Gregory E. Rogus\_\_\_\_\_
       One of their attorneys

Gregory E. Rogus, Esq.
Anastasios T. Foukas, Esq.
Segal, McCambridge, Singer & Mahoney, Ltd.
Sears Tower – Suite 5500
233 South Wacker Drive
Chicago, IL 60606
(312) 645-7800
1045577

12